COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Kelsey and McClanahan
Argued at Richmond, Virginia

WILLIAM A. PRYOR, JR.

                                                          OPINION BY
v.              Record No. 0947-06-2           JUDGE D. ARTHUR KELSEY
                                                          JUNE 19, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GREENE COUNTY
Paul M. Peatross, Jr., Judge

Charles L. Weber, Jr., for appellant.

Denise C. Anderson, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


        William A. Pryor, Jr. appeals his conviction for distribution of cocaine, a violation of

Code § 18.2-248.  He claims the trial court erred (i) in allowing the jury to view a videotape of a

later transaction which had been the subject of a stricken distribution charge, and (ii) in finding

the evidence sufficient to establish his guilt.  We hold the trial court erred in neither respect and

affirm Pryor's conviction.

                                                I.

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  This evidentiary

perspective requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences to be drawn therefrom."  Parks v. Commonwealth, 221 Va. 492, 498, 270

S.E.2d 755, 759 (1980) (emphasis and citation omitted).

        So viewed, the evidence showed that Deputy Sheriff Joseph Hogsten made an agreement

with Stephanie Wood to participate in a controlled narcotics buy from Pryor.  Wood advised

Hogsten that she had purchased crack cocaine from Pryor (known by Wood as "Willie") in the past and could call him to deliver more crack in the future. Wood agreed to cooperate in exchange for Hogsten's promise to assist in the dismissal of unrelated misdemeanor charges pending against her.

The first controlled buy occurred on June 16, 2003. Wood called Pryor and "his friend" and ordered $100 worth of crack to be delivered to her outside her home. Before Pryor and his friend arrived, Hogsten gave Wood $100, searched her for drugs, and installed a hidden video camera and microphone on her clothing to record the transaction. Hogsten then hid about 75 to 100 yards away to monitor the video and audio feed. It was still light outside, but it was late in the day and beginning to get dark.

From his observation post, Hogsten saw a white Toyota Camry drive up to Wood's residence. Two black individuals appeared to be in the Camry. Wood went to the car, and a transaction appeared to take place. From where he was positioned, Hogsten could not personally observe the exchange of money for drugs. After the Camry drove off, Wood presented Hogsten with crack cocaine she obtained from either "Willie" or the black female passenger in the Camry. Wood did not remember which one physically handed the drugs to her. Nor could she recall any conversation taking place — only an exchange of the money for the drugs.

The sting was repeated on July 24, 2003. Wood contacted "Willie" and requested that he deliver crack cocaine to her at her residence. "Willie" arrived in a white Toyota Camry, but this time accompanied by a black male. Wood paid the $100 purchase price and received crack cocaine either from "Willie" or his male companion. As before, the transaction was videotaped by a camera hidden in Wood's clothing.

The Commonwealth charged Pryor with two counts of distributing cocaine. At his trial, the prosecutor emphasized to the jury that the videotape would confirm that it was in fact Pryor

in the vehicle on both occasions. "You'll see on the videotape," the prosecutor stated, "that it will show that, indeed, it is the defendant." Pressing the issue of identity, the first line of Pryor's opening statement raised doubt as to the identity of the black male that appeared in the white Toyota Camry during the June 16 and July 24 incidents. "One of the questions for you today," Pryor's counsel emphasized, "is was it or was it not the defendant?" Counsel also explained that "[r]eliability of the confidential informant will be an issue" the jury must decide.

Hogsten was the first to testify. He described both transactions in detail and showed the jury the June 16 and July 24 videotapes. Pryor raised no objection when the prosecution offered both videotapes into evidence. After Hogsten testified, the Commonwealth put Wood on the stand. She corroborated Hogsten's testimony about the June 16 controlled buy but equivocated about the details of the July 24 transaction. Pryor's counsel impeached Wood with a prior felony conviction and with cross-examination highlighting her admitted self-interest in cooperating with Hogsten.

Seeking to bolster its evidence that Pryor was the only individual appearing in the vehicle during both incidents, the prosecutor called to the stand a witness from the Division of Motor Vehicles. The DMV witness verified that Pryor was the registered owner of a white Toyota Camry. The Commonwealth also introduced other evidence that Pryor had been seen on another occasion in the white Toyota Camry.

At the close of the Commonwealth's case, Pryor moved to strike the second charge arising out of the July 24 transaction. Given Wood's equivocations on that incident, the trial court struck the second distribution charge and advised the jury that there was only "one charge remaining," the one arising out of the June 16 transaction. The court then instructed the jury on the elements of the distribution charge, the definition of principal in the second degree, and other routine instructions.

During closing arguments, the prosecutor emphasized that "this is not a mistaken identity case." He also called the jury's attention to the videotapes of both the June 16 *and* the July 24 incidents. Watching the videotapes, the prosecutor told the jurors, "you see the defendant appear in the July 24th incident." Raising no objection to the prosecutor's argument, Pryor's counsel focused his closing argument on Wood's lack of credibility. As to the identity of the black male in the white Toyota Camry, counsel pointed out that there was no testimony about "license plates" or any other unique features of the vehicle. From the video of the June 16 incident, Pryor's counsel argued, "you'll see where he's sitting, *if it is him, first of all*, and where is that person sitting? That's your decision."

After the jury retired for deliberations, the trial court instructed the bailiff to deliver the exhibits to the jurors for their review. Pryor's counsel objected to the videotape of the July 24 incident, claiming that the court had stricken it from the evidence by striking the evidence in support of the July 24 distribution charge. The Commonwealth disagreed, contending that the videotape of the July 24 incident remained relevant to the June 16 charge. "We would submit that it's corroborative of his being at her residence . . . [w]hether it was actually him or not," the prosecutor explained. From this perspective, the July 24 video — showing Pryor in the same vehicle, at Wood's residence, after having been called by Wood to come there — "corroborates the fact that the first incident took place and the defendant was a participant in that."

In response, Pryor's counsel conceded the second videotape "shows someone who resembles my client, who would have --- resembles a guy on the 16th in the car." Further reinforcing this concession, Pryor's counsel added: "I wouldn't be making this argument if this occurred *prior to the 16th.*" Because the identity evidence came *after* the June 16 drug transaction, counsel argued, it necessarily made the evidence more prejudicial than probative. The trial court disagreed and overruled the objection.

- 4 -

After the bailiff brought the exhibits (including the videotape of the July 24 incident) to the jury room, the foreman submitted questions to the trial court. One of the questions asked whether the jury could again review the videotape of the July 24 incident. The trial court answered: "Yes, but only as it may be relevant to the June 16, '03 charge. It may not be considered for the July 24, '03 charge, which has been struck and is not before you."

The jury found Pryor guilty of distributing cocaine on June 16, 2003. After trial, Pryor moved the court to set aside the verdict on two grounds. The trial court erred, Pryor argued, in permitting the jury to review the videotape of the July 24 incident. And, with or without the July 24 videotape, Pryor added, the verdict rested on an insufficient factual basis. The trial court rejected both arguments and entered final judgment.

Pryor repeats these arguments on appeal. We find neither persuasive.

## II.

### A.   ADMISSIBILITY OF THE JULY 24 VIDEOTAPE

"Two threshold principles govern appellate review of evidentiary decisions." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005). "First, we do not review such decisions *de novo*." Id. "Given the 'broad discretion' of a trial judge over evidentiary matters, we apply a deferential abuse-of-discretion standard of appellate review." Id. (quoting Seaton v. Commonwealth, 42 Va. App. 739, 752, 595 S.E.2d 9, 15 (2004)). "This standard, if nothing else, means that the trial judge's 'ruling will not be reversed simply because an appellate court disagrees.'" Id. (quoting Henry J. Friendly, Indiscretion about Discretion, 31 Emory L.J. 747, 754 (1982)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006) (citation omitted).

The second principle accepts that "every fact, 'however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant.'" Thomas, 44 Va. App. at 753, 607 S.E.2d at 743 (footnote omitted) (quoting Va. Elec. & Power Co. v. Dungee, 258 Va. 235, 260, 520 S.E.2d 164, 179 (1999)). "Put another way, evidence has relevance if it 'tends to cast any light' on any material point." Id. (citation omitted).

> It is its *tendency* to prove or disprove — not its sufficiency, standing alone, to satisfy the ultimate burden of proof — that makes a fact relevant: "It is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"

Id. at 753-54, 607 S.E.2d at 744 (footnote omitted) (quoting McKoy v. North Carolina, 494 U.S. 433, 440 (1990) (citations and internal brackets omitted)). "This standard entrusts juries with the task of weighing evidence of all probative gradations and gives them the freedom to accept or reject what they will." Id. "We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill." Id. (citation omitted).

While acknowledging these principles, Pryor argues the trial court nonetheless abused its discretion in admitting the July 24 videotape because it has no relevance except to show, impermissibly, a subsequent bad act of the defendant for the purpose of inflaming the jury with propensity evidence. If that conclusion were true, we would certainly agree and remand for a new trial. It is not true, however.

"Ultimately, the question whether to admit evidence of other crimes involves the same considerations as any other circumstantial evidence." Spencer v. Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 616 (1990). Settled Virginia law "follows an 'inclusionary approach' to the uncharged misconduct doctrine by admitting such evidence 'if relevant, for any purpose *other*

*than* to show a mere propensity or disposition on the part of the defendant to commit the crime.'"
Thomas, 44 Va. App. at 757 n.8, 607 S.E.2d at 745 n.8 (quoting Kent Sinclair, Joseph C. Kearfott, Paul F. Sheridan, & Edward J. Imwinkelried, Virginia Evidentiary Foundations § 6.4[A], at 165 (1998) (emphasis in original)).

In this case, the other-than-propensity purpose for admitting the July 24 videotape was to rebut Pryor's mistaken-identity argument. The video placed Pryor in a white Toyota Camry on July 24 arriving at Wood's residence after being called by Wood. It tended to prove he was also the *same* (and only) black male (whom Wood only knew by the name "Willie") in the *same* car that had previously been at Wood's residence on June 16. And it was further corroborated by the additional evidence linking Pryor to the white Toyota Camry.

Needless to say, the defendant's identity as the criminal actor is a threshold fact that any prosecution must establish. Proving this fact does not conflict "with the prior-bad-acts doctrine (he has done it before, thus, he did it this time) or the other-crimes principle (he committed one crime, thus, he committed another)" which are both "applications of the same rule prohibiting the use of propensity evidence in criminal prosecutions." Thomas, 44 Va. App. at 756, 607 S.E.2d at 745. Proof of the "identity of the accused," when that question is "in issue," has been universally understood as outside the prohibition on mere propensity evidence for logical relevance purposes. Gonzales v. Commonwealth, 45 Va. App. 375, 381, 611 S.E.2d 616, 619 (2005) (*en banc*) (citation and footnote omitted); see also Commonwealth v. Minor, 267 Va. 166, 174, 591 S.E.2d 61, 66-67 (2004) (recognizing that a "contested issue about the defendant's identity" would generally render other crimes evidence logically relevant).

When a non-propensity basis exists for admitting evidence, it does not matter if it involves incidents *preceding* or *subsequent to* the date of the alleged crime. See generally Scott v. Commonwealth, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984) (accepting that, when

logically and legally relevant, factual circumstances "which followed the commission of the crime on trial, as well as those which preceded it" should be admissible "even though they may show the defendant guilty of other offenses"); see also Thomas, 44 Va. App. at 757 n.7, 607 S.E.2d at 745 n.7 (citation omitted). A defendant, after all, "has no right to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial." Gregory v. Commonwealth, 46 Va. App. 683, 696-97, 621 S.E.2d 162, 169 (2005) (quoting Scott, 228 Va. at 526, 323 S.E.2d at 577); see also Jones v. Commonwealth, 32 Va. App. 30, 41, 526 S.E.2d 281, 286 (2000).

Pryor counters that, whether relevant or not, the July 24 videotape should have been excluded because it was unduly prejudicial. We disagree. "In a sense, all 'evidence tending to prove guilt is prejudicial' — at least from the point of view of the person standing trial." Thomas, 44 Va. App. at 757, 607 S.E.2d at 746 (quoting Powell v. Commonwealth, 267 Va. 107, 141, 590 S.E.2d 537, 558 (2004)). "Virginia law, however, intervenes only when the alleged prejudice tends to inflame irrational emotions or leads to illegitimate inferences. And even then, it becomes a matter of degree." Id. "Relevant evidence may be excluded *only* if the prejudicial effect of the evidence outweighs its probative value." Goins v. Commonwealth, 251 Va. 442, 461, 470 S.E.2d 114, 127 (1996) (emphasis added). "We generally defer to trial judges on this subject because they, unlike us, participate first person in the evidentiary process and acquire competencies on the subject that we can rarely duplicate merely by reading briefs and transcripts." Thomas, 44 Va. App. at 758, 607 S.E.2d at 746.

Under the circumstances of this case, we see good reason to defer to the trial court on this judgment call. Pryor's counsel raised the identity issue in both his opening statement and his closing argument. Pryor's counsel also proffered to the court the visual contents of the videotape, including the fact that it depicted a black male that appeared to be Pryor. The jury

had already seen the July 24 videotape during the Commonwealth's case-in-chief before the July 24 charge was stricken. At that time, Pryor requested no cautionary instruction to preclude the jury's consideration of the July 24 videotape for any reason associated with the June 16 charge. And when the jury itself raised the question directly, the trial court properly instructed them to consider that evidence *only* to the extent it related to the June 16 charge, because at that time the July 24 charge was no longer before the jury. For these reasons, we cannot say that the trial court abused its discretion in leaving the July 24 videotape in evidence for purposes of proving Pryor's identity as the lone black male occupying the white Toyota Camry at the time of the June 16 controlled buy.[1]

## B.   SUFFICIENCY OF THE EVIDENCE

Pryor contends that the evidence fails to prove him guilty of distributing cocaine during the June 16 controlled buy. We disagree.

When a jury decides the case, Code § 8.01-680 requires that "we review the jury's decision to see if reasonable jurors could have made the choices that the jury did make. We let the decision stand unless we conclude no rational juror could have reached that decision." Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en banc*), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003). Put another way, a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted). We must instead ask whether "*any* rational trier of fact could have found the essential elements of the

---

[1] The Commonwealth did not raise on appeal (and, given our holding, we need not address) the question whether the contemporaneous objection rule required Pryor to object at the time of the admission of the July 24 videotape to any consideration of that evidence in support of the June 16 charge. For similar reasons, we likewise do not decide whether Pryor's successful motion to strike the evidence in support of the July 24 charge should have expressly challenged the continuing admissibility of the July 24 videotape.

crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson, 443 U.S. at 319 (emphasis in original)).  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Id.  "As an appellate court, we are not permitted to reweigh the evidence." Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007).

The jury found Pryor guilty of distributing cocaine to Wood on June 16.  Consistent with the Commonwealth's theory of the case, the trial court instructed the jury on the definition of principal in the second degree:

> A principal in the first degree is the person who actually commits the crime.  A principal in the second degree is a person who is present, aiding and abetting, by helping in some way in the commission of the crime.  Presence and consent alone are not sufficient to constitute aiding and abetting.  It must be shown that the defendant intended his words, gestures, signals or actions to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it.
>
> A principal in the second degree is liable for the same punishment as the person who actually committed the crime.

1 Virginia Model Jury Instructions, Criminal, No. 3.100, at 3-3 (2006); see also Code § 18.2-18 ("In the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree . . . ."); Rollston v. Commonwealth, 11 Va. App. 535, 539, 399 S.E.2d 823, 825 (1991) (recognizing principal in the second degree liability where "defendant procured, encouraged, countenanced, or approved commission of the crime").

Ample evidence supports the rationality of the jury's finding that Pryor participated in the drug deal as a principal in the second degree, if not a principal in the first degree.  Seeking to buy cocaine, Wood called Pryor and his friend.  Accompanied by an unidentified female, Pryor went

to Wood's residence in *his* white Toyota Camry.  An open exchange of money for drugs occurred between Wood and either Pryor or his female companion.  Pryor participated in the planning for the drug deal, provided the transportation, and either physically passed the drugs to Wood in exchange for the $100 purchase price or aided and abetted his companion in doing so.  The fact that Pryor showed up in exactly the same vehicle on July 24 (accompanied this time by a male) supported Wood's testimony that Pryor in fact was the lone male in the vehicle during the June 16 drug deal.

To be sure, "it is certain that proof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same."  Pugliese v. Commonwealth, 16 Va. App. 82, 93-94, 428 S.E.2d 16, 25 (1993) (quoting Foster v. Commonwealth, 179 Va. 96, 99-100, 18 S.E.2d 314, 316 (1942)).  The evidence before the jury amply satisfied this standard of criminal culpability.

### III.

Finding no error in the trial court's admission of the July 24 videotape or in the rationality of the jury's verdict of guilt, we affirm Pryor's conviction.

Affirmed and remanded.[2]

---

[2] The indictment, arraignment, trial transcript, and verdict form (as well as the briefs on appeal) all identify Pryor's crime on June 16, 2003, as distributing cocaine in violation of Code § 18.2-248.  The final sentencing order, however, mistakenly refers to the convicted crime as mere possession of cocaine in violation of Code § 18.2-248.  Because of this inconsistency, we remand this case to the circuit court with leave to correct the apparent clerical error in the final order.  See Code § 8.01-428(B).