COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia


STEVEN ALLEN RIDDICK

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1102-07-1                      JUDGE JAMES W. HALEY, JR.
                                                          MAY 13, 2008

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                        Christopher W. Hutton, Judge

            Charles E. Haden for appellant.

            Rosemary V. Bourne, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


                              I.  INTRODUCTION

        Steven Allen Riddick appeals his conviction for first-degree murder in the death of

Veronica Collins-Goss from the Circuit Court of the City of Hampton.  Riddick argues the circuit

court erred in (1) admitting statements Collins-Goss made to others that she was pregnant and

that Riddick was the father, (2) permitting his probation officer to testify during the guilt phase

of the trial, and (3) failing to strike the first-degree murder charge.  We affirm the circuit court.

                                 II.  FACTS

        Under settled principles, we review the evidence in the "light most favorable" to the

Commonwealth.  Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

That principle requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences to be drawn therefrom."  Parks v. Commonwealth, 221 Va. 492, 498, 270

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

S.E.2d 755, 759 (1980) (emphasis and citation omitted). So viewed, the evidence at trial established as follows.

In the evening of September 8, 2003, Collins-Goss returned to her apartment alone around 10:00 p.m. Thereafter, an argument began in her apartment. Khaira Blandford, who lived below Collins-Goss, "heard a loud argument, two people arguing, a female voice and a male's voice arguing, screaming, things being thrown around." Blandford stated as the argument intensified, someone turned on loud music, which made the voices more difficult to understand. At one point and in spite of the loud music, Blandford heard Collins-Goss scream "don't hurt me, don't hurt my baby, don't hurt your baby, don't you want your baby."

While Blandford initially did not take any action in response to the argument, she became alarmed and called the police after she "heard an extremely loud thump, as though something had been thrown against the wall." Due to the impact, "the pictures and the clock in my roommate's room fell off the wall and boxes fell out of the closet." The police arrived approximately ten to fifteen minutes later. They knocked on Collins-Goss' apartment, but no one answered. The police then waited in their car outside the building for fifteen to twenty minutes, but since it appeared to them no one was in the apartment, departed. Blandford knocked on Collins-Goss' door twice the next day, but received no answer.

At approximately 2:20 a.m. on September 9, 2003, Officer John D'Busk encountered Riddick walking in an industrial area of Suffolk, Virginia in the rain and heavy wind. D'Busk approached Riddick and asked him why he was there. Riddick stated he had been traveling with a friend in his friend's car, but the car had broken down and the two of them had separated to find assistance. Riddick indicated the left front tire was flat. At Riddick's request, D'Busk took him to a nearby pay phone. D'Busk then began searching for the vehicle, which he had obtained a description of from Riddick, and found a vehicle matching the description. The car also had a

flat left front tire. D'Busk contacted another officer in the area to bring Riddick to the car to identify it. When Riddick arrived, he denied it was the right car and, in contradiction of his earlier statement, claimed the car he spoke of did not have a flat tire. He stated his friend was driving the car, but could not tell D'Busk the name of his friend. Riddick then stated it was not his friend who was driving, but his friend's girlfriend and that her name was Monique. The car was registered to Collins-Goss.

D'Busk offered Riddick a seat in his patrol car given the inclement weather, which Riddick accepted. As D'Busk continued to examine the car, Officer Gaines, who transported Riddick to the scene, saw Riddick take something from his pocket and throw it in his boot. Gaines removed Riddick from the car and frisked him. Gaines took car keys from Riddick's boot. D'Busk asked Riddick whether they were the keys to the car, and Riddick stated the car belonged to his friend. D'Busk asked whether it belonged to his friend or his friend's girlfriend, and Riddick said he meant to say the girlfriend. The keys opened the car. The officers later freed Riddick when they could not contact Collins-Goss and the vehicle did not register as stolen.

Collins-Goss' body was discovered in her apartment late in the evening of September 10, 2003, by two police officers. They gained entry to the apartment after having a maintenance worker unlock it.

Dr. Wendy Gunther performed an autopsy on Collins-Goss. Her testimony revealed that the victim had suffered multiple injuries. These included blackened eyes, a split lip, and a broken nose. Her death was caused by "blunt impact . . . trauma" to the rear and side of her head, resulting in bleeding into and swelling of the brain. This trauma was consistent with being struck by an iron. In addition, though not a cause of death, physical evidence demonstrated that the victim had also been strangled.

- 3 -

Betty Jane Blankenship, who is a scientist working in DNA testing, testified blood taken from the crime scene matched the DNA profile of Riddick. Riddick's DNA was found in a blood stain on a hamper. It was also located in fingernail clippings taken from Collins-Goss. Blankenship testified that given the number of samples tested where Riddick's DNA appeared, Riddick was the only person in the world whose DNA could produce the matches. Blankenship further testified Riddick's DNA from Collins-Goss' fingernail clippings likely arrived there soon before she died since a simple hand washing would have eliminated the DNA.

Police arrested Riddick on September 12, 2003. Riddick denied responsibility for Collins-Goss' death during questioning. An examination of Riddick's body by police pursuant to a search warrant revealed multiple recent wounds. Detective Curtis Crouch stated Riddick "had multiple scratches on different and various parts of his body." The scratches appeared on the neck, torso, and legs. Crouch further stated Riddick "had one particular wound that was to one of his fingers that was still oozing. It was not scabbed over." Riddick volunteered to Crouch that the injuries occurred during a recent incarceration.

Collins-Goss had told her mother, Thelma Graham, and two friends, Melissa Grubb and Anisha Brown, that she was pregnant by Riddick. All three testified to this at trial. The autopsy confirmed Collins-Goss was pregnant.

Riddick's probation officer also testified. Riddick told him on July 16, 2003, and September 10, 2003, that his address was the same as Collins-Goss' apartment. An agent of the apartment complex where Collins-Goss lived testified her apartment was leased to both her and Riddick.

A grand jury indicted Riddick for murder on February 2, 2004. Riddick was tried before a jury, which found him guilty of first-degree murder on September 28, 2006. On September 29,

2006, the jury recommended Riddick receive a sentence of fifty years incarceration. The court imposed this sentence. Riddick now appeals.

### III. ANALYSIS

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). We presume the decision of the circuit court to be correct. Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). This Court will "affirm the conviction unless it is plainly wrong or without evidence to support it." Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 906 (2001).

#### A. Whether the Circuit Court Erred in Admitting Hearsay that Collins-Goss Was Pregnant by Riddick

Riddick first claims the circuit court erred in admitting hearsay statements made by Collins-Goss that she was pregnant and that Riddick was the father. Riddick claims this violated his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution. He further argues the court should have prohibited the testimony because it did not come within the state-of-mind exception to hearsay.

In Crawford v. Washington, 541 U.S. 36, 68 (2004), the Supreme Court held that when the prosecution seeks to admit testimonial hearsay, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." The Court held testimonial evidence includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. The Court chose not to address whether nontestimonial hearsay receives Sixth Amendment protection. Id. at 61. In Davis v. Washington, 547 U.S. 813, 821 (2006), the Supreme Court made clear that only testimonial statements implicate the Sixth Amendment. In another portion of the opinion relevant to this appeal, the Court stated that "statements made unwittingly to a Government informant" and

"statements from one prisoner to another" "were clearly nontestimonial." Id. at 825. Relying on these cases, our Supreme Court recently wrote that "the question whether admission of a hearsay statement . . . violates the Confrontation Clause turns on whether the statement is 'testimonial' in nature." Magruder v. Commonwealth, 275 Va. 283, 294-95, 657 S.E.2d 113, 118 (2008).

The statements at issue in this case, which were casual remarks from Collins-Goss that she was pregnant and that Riddick was the father, were clearly nontestimonial under these cases. They, therefore, do not receive Confrontation Clause protection. Indeed, Riddick concedes on brief the statements are nontestimonial. Riddick's counsel stated at oral argument he was unaware of the Supreme Court's holding in Davis at the time he wrote his brief, but conceded its strength. We apply Davis, as we are bound to do.

We next consider whether the statements were admissible under the state-of-mind exception to the hearsay rule. The Supreme Court of Virginia has held regarding this exception:

> Generally, statements made by a crime victim that show the victim's state of mind are admissible as an exception to the hearsay rule, provided the statements are relevant and probative of some material issue in the case. Evidence is relevant if it tends to prove or disprove, or is pertinent to, matters in issue.

Clay v. Commonwealth, 262 Va. 253, 257, 546 S.E.2d 728, 730 (2001) (citations omitted). "The key to the admissibility of evidence showing a victim's state of mind is thus its relevance to a material issue in the case. Relevance exists when the evidence has a 'logical tendency, however slight, to prove a fact at issue in a case.'" Hodges v. Commonwealth, 272 Va. 418, 436-37, 634 S.E.2d 680, 690 (2006) (quoting Winston v. Commonwealth, 268 Va. 564, 596, 604 S.E.2d 21, 39 (2004) (citations omitted), cert. denied, 546 U.S. 850 (2005)). We review the circuit court's decision only for an abuse of discretion. Schneider v. Commonwealth, 47 Va. App. 609, 613-14, 625 S.E.2d 688, 690 (2006).

We conclude the circuit court did not abuse its discretion since the statements at issue here fall within the state-of-mind exception because they tend to prove the identity of Collins-Goss' attacker. Riddick has not contested the admissibility of the testimony of Khaira Blandford that Collins-Goss stated "don't hurt me, don't hurt my baby, don't hurt your baby, don't you want your baby." The person Collins-Goss believed to be the father of her unborn child represents key evidence in establishing the identity of her assailant. The hearsay testimony that Collins-Goss believed Riddick to be the father strongly tends to establish Riddick as the attacker. It is thus relevant "to a material issue in the case" and admissible.[1] Hodges, 272 Va. at 436, 634 S.E.2d at 690.

### B. Whether the Circuit Court Erred in Permitting Riddick's Probation Officer to Testify

Riddick next contends the circuit court erred by allowing his probation officer to testify. Riddick argues the presence of the probation officer unfairly portrayed him as someone likely to commit crime.

We hold that assuming without deciding Riddick's argument has merit, at this point in our analysis any error in this regard was harmless as the Commonwealth presented overwhelming evidence of Riddick's guilt. The Supreme Court of Virginia has adopted the test of the United States Supreme Court for determining non-constitutional harmless error. Billips v. Commonwealth, 274 Va. 805, 810, 652 S.E.2d 99, 102 (2007). That test has been stated as follows:

---

[1] As noted, Riddick argues the statements made by Collins-Goss were not within the state-of-mind exception to the hearsay rule. Accordingly, we addressed and rejected that argument. In addition, however, the Collins-Goss statements can be characterized as not hearsay at all. Rather, the statements could be relevant circumstantial evidence of her state of mind, but, not being offered as to the truth of the matter asserted, that is, that she was, in fact, pregnant and Riddick was, in fact, the father, not hearsay and thus admissible. See Hodges v. Commonwealth, 45 Va. App. 735, 756, 613 S.E.2d 834, 844 (2005), aff'd in part, rev'd in part, 272 Va. 418, 428-29, 634 S.E.2d 680, 685 (2006); 2 McCormick on Evidence § 274 (6th ed. 2006).

> "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand."

Clay, 262 Va. at 260, 546 S.E.2d at 731-32 (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)). "Under this standard, non-constitutional error is harmless if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison that we can conclude the error 'failed to have any "substantial influence" on the verdict.'" Schwartz v. Schwartz, 46 Va. App. 145, 159, 616 S.E.2d 59, 66 (2005) (quoting United States v. Lane, 474 U.S. 438, 450 (1986)). The Commonwealth has the burden of showing harmless error. Jones v. Commonwealth, 50 Va. App. 437, 446, 650 S.E.2d 859, 864 (2007).

The Commonwealth presented overwhelming evidence of Riddick's guilt. As noted above, Collins-Goss' neighbor heard her say shortly before her death that her assailant was the father of her unborn child. The testimony of Graham, Brown, and Grubb agreed that Collins-Goss regarded Riddick as the father. Riddick's DNA was found under Collins-Goss' fingernails, even though had Collins-Goss simply washed her hands between the time it got there and her death it likely would have been removed. Riddick's DNA was also located in a blood stain on a hamper in Collins-Goss' apartment. When Officer Crouch photographed Riddick's body shortly past midnight on September 13, 2003, he observed multiple scratches on his body, including a wound that had yet to scab. Finally, when the police encountered Riddick in the early hours of September 10, 2003, only a couple hours after the attack on Collins-Goss, Riddick had keys to Collins-Goss' car but claimed it belonged to someone else and further provided police with inconsistent statements. The fact finder could consider this evidence of guilt.

Rollston v. Commonwealth, 11 Va. App. 535, 548, 399 S.E.2d 823, 831 (1991).  Thus, we find

that assuming the circuit court committed error, it was plainly harmless.

### C.  Whether the Circuit Court Erred in Declining to Strike the First-Degree Murder Charge

Finally, Riddick contends the circuit court erred in denying his motion to strike the

first-degree murder charge.  He makes two arguments under this heading.  First, he contends the

evidence failed to show he acted with the premeditation required for a first-degree murder

conviction.  Second, he argues the Commonwealth failed to exclude every reasonable hypothesis

of his innocence and, therefore, urges us to dismiss his conviction.  Having already found the

Commonwealth presented overwhelming evidence of Riddick's guilt, we evaluate only the first

argument.

When reviewing the sufficiency of the evidence from a jury verdict, we inquire only

whether "'reasonable jurors could have made the choices that the jury did make.  We let the

decision stand unless we conclude no rational juror could have reached that decision.'"  Pryor v.

Commonwealth, 50 Va. App. 42, 54, 646 S.E.2d 21, 27 (2007) (quoting Pease v.

Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en banc*), aff'd, 266 Va.

397, 588 S.E.2d 149 (2003)).  The question is simply if "'after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.'"  Maxwell v. Commonwealth, 275 Va. 437,

442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

As relevant here, the Code requires that to prove a first-degree murder charge the

Commonwealth must prove a "willful, deliberate, and premeditated killing."  Code § 18.2-32.

"'The test of murder is malice.  Every malicious killing is murder either in the first or second

degree -- the former if deliberate and premeditated, and the latter if not.'"  Wooden v.

Commonwealth, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981) (quoting Jacobs v.

<u>Commonwealth</u>, 132 Va. 681, 686, 111 S.E. 90, 92 (1922)).  The law gives "a *prima facie* presumption of malice arising from the mere fact of a homicide, but there is no presumption therefrom of deliberation and premeditation."  <u>Bradshaw v. Commonwealth</u>, 174 Va. 391, 398, 4 S.E.2d 752, 755 (1939).  The Commonwealth has the burden of demonstrating premeditation, and the defendant has the burden of showing factors reducing the offense below murder.  <u>Painter v. Commonwealth</u>, 210 Va. 360, 364, 171 S.E.2d 166, 170 (1969).

Premeditation involves "a specific intent to kill."  <u>Rhodes v. Commonwealth</u>, 238 Va. 480, 485, 384 S.E.2d 95, 98 (1989).  A person may form this intent only a moment before committing murder.  <u>Coles v. Commonwealth</u>, 270 Va. 585, 590, 621 S.E.2d 109, 112 (2005), <u>cert. denied</u>, 127 S. Ct. 441 (2006).  "It is the will and purpose to kill, not necessarily the interval of time, which determine the grade of the offense."  <u>Akers v. Commonwealth</u>, 216 Va. 40, 48, 216 S.E.2d 28, 33 (1975).

The question of whether a defendant killed with premeditation is committed to the jury. <u>Smith v. Commonwealth</u>, 220 Va. 696, 701, 261 S.E.2d 550, 553 (1980).  Factors the jury may consider include "the brutality of the attack, and whether more than one blow was struck; the disparity in size and strength between the defendant and the victim; the concealment of the victim's body; and the defendant's lack of remorse and efforts to avoid detection."  <u>Epperly v. Commonwealth</u>, 224 Va. 214, 232, 294 S.E.2d 882, 892 (1982) (citations omitted).  Motive is "often most persuasive."  <u>Id.</u> at 214, 294 S.E.2d at 893.  It is appropriate to consider how these factors combine.  <u>Id.</u>  As long as a reasonable jury could have reached the same conclusion as the jury below, we will affirm.  <u>Hudson</u>, 265 Va. at 513, 578 S.E.2d at 785.

We conclude a reasonable jury could have found Riddick underwent the necessary premeditation to commit first-degree murder.  Indeed, each of the <u>Epperly</u> factors weighs in favor of premeditation except for concealing the body and motive.  First, the attack was quite

brutal. Collins-Goss died from being beaten in the head. Her injuries were consistent with being hit in the face with an iron. She suffered two black eyes, a split lip, and a broken nose. She also showed evidence of having been strangled, along with numerous other minor injuries. Second, Riddick attacked a pregnant woman. Third, Riddick failed to demonstrate remorse. He denied responsibility when questioned by police. Finally, Riddick attempted to avoid detection by telling the police Collins-Goss' car belonged to someone else even though he had the keys to it. Taken together, these factors permitted the jury to find Riddick formed a premeditated intent to kill.

For the foregoing reasons, we affirm the judgment of the circuit court.

<u>Affirmed.</u>