COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Chaney and Frucci
Argued by videoconference

CRUZ MONTALVO SANCHEZ

v.      Record No. 0747-24-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE STEVEN C. FRUCCI
APRIL 15, 2025

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
James A. Willett, Judge

Erin T. Ford for appellant.

Justin M. Brewster, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, the circuit court convicted Cruz Montalvo Sanchez ("Montalvo

Sanchez") of two counts of aggravated sexual battery. On appeal, Montalvo Sanchez argues that

the circuit court erred by denying his motion to strike a juror for cause. He also contends that the

circuit court erred by overruling his objection to the admission of a photograph of the victim. For

the following reasons, we affirm the circuit court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Meade v. Commonwealth*,

74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

"Accordingly, we regard as true all credible evidence favorable to the Commonwealth and all

inferences that may reasonably be drawn from that evidence." *Id.* (quoting *Gerald*, 295 Va. at 473).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

*I. The Offenses*

In 2011, when B.G.[1] was six years old, she moved into the Colonial Village apartments in Prince William County. She lived there with her mother, her siblings, her two uncles, her grandmother, and Montalvo Sanchez.[2] On days that B.G.'s mother was out of the house working, her grandmother watched the children. On his days off, Montalvo Sanchez would also stay at the house with the children and the grandmother.

One evening, while B.G.'s grandmother was walking the dog, B.G. entered the bathroom and closed the door. Montalvo Sanchez opened the door, entered the bathroom, and shut the door behind him. Montalvo Sanchez proceeded to slide his hand down B.G.'s shorts and put his fingers inside her vagina. When he heard the dog barking as B.G.'s grandmother returned to the apartment, Montalvo Sanchez ran out of the bathroom and sat in the living room.

On a separate occasion, B.G. went to sleep next to her grandmother on a fold-out bed in the living room. Montalvo Sanchez was on the floor next to the bed. After B.G.'s grandmother fell asleep, Montalvo Sanchez tried to pull B.G. off the bed, but she resisted, knocking down a chair and awakening her grandmother. When B.G.'s grandmother fell asleep again, Montalvo Sanchez offered B.G. money to get on the floor with him. He also said that if she refused, "then something will happen." Scared, and knowing that Montalvo Sanchez always carried a knife, B.G. got on the floor with him. Once there, Montalvo Sanchez put his fingers in B.G.'s vagina and attempted to insert his penis into her vagina.

Another time, while B.G. was in a bedroom and her grandmother was walking the dog, Montalvo Sanchez entered the room and asked to give B.G. a piggyback ride. When B.G. got on

---

[1] We use initials, rather than names, to protect the privacy of the victim.

[2] At the time, Montalvo Sanchez was in a relationship with B.G.'s grandmother.

Montalvo Sanchez's shoulders, he turned her around so her "vagina was in his face" and he put his tongue in her vagina.

Another day when B.G.'s grandmother was at church, B.G. walked into the living room and saw Montalvo Sanchez on the floor drinking beer. Montalvo Sanchez placed a knife on a nearby table and threatened to kill her. Montalvo Sanchez motioned for her to be quiet and come over to him. Scared, B.G. acquiesced. Montalvo Sanchez told her to massage his back. He then told her to get on the floor. After which, he climbed on top of her and put his penis inside her vagina. B.G. did not tell anyone about the incidents because she feared Montalvo Sanchez, who had threatened to kill her or her family.

In 2021, B.G. told her mother what Montalvo Sanchez had done, and her mother called the police. B.G.'s mother told the grandmother about the abuse, who then confronted Montalvo Sanchez. He stated that "he had done nothing." When B.G.'s grandmother told Montalvo Sanchez to tell her the truth, Montalvo Sanchez left "and he never came back." In September 2022, B.G.'s mother saw Montalvo Sanchez in Fairfax County. She called the police, and they apprehended him.

*II. Jury Selection*

At trial, C.E.[3] was one of twenty-four prospective jurors on the initial venire. During voir dire, the venire indicated that they had not "expressed or formed any opinion about the guilt or innocence of" Montalvo Sanchez or knew of any reason why they could not be impartial. When the Commonwealth later asked if any of the jurors would "have difficulty being fair and impartial," C.E. indicated that she might. She explained that she had been a police officer and worked in the special victims unit investigating child pornography. She stated that she "really fe[lt] angry thinking about it right now." The Commonwealth asked if she could set her anger aside and agree to judge the case "solely on the evidence you hear in this room," and C.E. stated that she "can try."

---

[3] We use initials, rather than names, to protect the privacy of the prospective juror.

- 3 -

Montalvo Sanchez moved to strike C.E. for cause, arguing that she was unable to be fair and impartial. The court denied the motion, stating that counsel would have a chance to ask her questions and he could renew the motion at that time. Another potential juror stated that her emotions would prevent her from fairly and impartially judging the facts in the case. The court struck the second juror for cause, without objection from the Commonwealth.

Montalvo Sanchez then questioned C.E. and asked, "So given what you understand in brief about the nature of the case, is there any reason you can think of that you cannot be fair and impartial in judging the evidence in this case?" C.E. responded that she "would like to think [she would] be impartial" but agreed she was uncertain. Later when addressing all the veniremen, Montalvo Sanchez asked, "[d]espite the nature of the allegations, [was] there anyone who would have any difficulty returning a verdict of not guilty if the evidence does not rise to the level of proof beyond a reasonable doubt?" C.E. did not state that she would have such a difficulty. Montalvo Sanchez did not renew his motion to strike C.E. for cause. C.E. was struck by a peremptory strike[4] and did not serve on the jury.

### III. Admission of Photograph

At trial, B.G.'s mother identified B.G. in a photograph taken when B.G. was approximately seven years old and living in the Colonial Village apartments. She testified that the picture was an accurate representation of B.G. at that age. Montalvo Sanchez objected to the introduction of the picture on relevance grounds. He asserted the photograph had no probative value. The Commonwealth responded that the photograph was relevant to show the jury how B.G. looked at the time when the abuse began. When asked to explain how the photograph prejudiced him, Montalvo Sanchez asserted that the photograph "appeals to the emotions of the finder of fact" and

---

[4] The record does not reflect which party struck C.E.

"has no other purpose than to show some young seven-year-old girl." Overruling the motion, the circuit court admitted the photograph into evidence.

Ultimately, the jury found Montalvo Sanchez guilty of two counts of aggravated sexual battery. This appeal follows.

ANALYSIS

*I. Montalvo Sanchez's Motion to Strike C.E.*

"The striking of any individual potential juror for cause . . . is committed to the sound discretion of the trial court." *Townsend v. Commonwealth*, 270 Va. 325, 329 (2005) (citing to *Barrett v. Commonwealth*, 262 Va. 823, 826 (2001); *Cantrell v. Crews*, 259 Va. 47, 50 (2000)). "It is the duty of the trial court, through the legal machinery provided for that purpose, to procure an impartial jury to try every case." *Salina v. Commonwealth*, 217 Va. 92, 93 (1976) (citing *Slade v. Commonwealth*, 155 Va. 1099, 1106 (1931)). Therefore, "[t]he court and counsel for either party shall have the right to examine under oath any person who is called as a juror therein." Code § 8.01-358; *see* Rule 3A:14. If after questioning it appears to the circuit court "that the juror does not stand indifferent in the cause, another shall be drawn or called and placed in his stead for the trial of that case." *Id.* "If a prospective juror 'does not stand indifferent to the cause, he is not competent. If he has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice, he is excluded by the law.'" *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 60-61 (2011) (*Spangler v. Ashwell*, 116 Va. 992, 996-97 (1914)).

"It is not uncommon to discover during *voir dire* that prospective jurors have preconceived notions, opinions, or misconceptions about the criminal justice system, criminal trials and procedure, or about the particular case." *Cressell v. Commonwealth*, 32 Va. App. 744, 761 (2000). "The opinion entertained by a juror, which disqualifies him, is an opinion of that

fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *Justus v. Commonwealth*, 220 Va. 971, 976 (1980) (quoting *Slade*, 155 Va. at 1106). Thus, "the test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial." *Cressell*, 32 Va. App. at 761.

Given that the circuit court is "able to see and hear each member of the venire respond to questions posed" during voir dire, it "is in a superior position to determine whether a prospective juror's responses during voir dire indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath." *Townsend*, 270 Va. at 329 (quoting *Green v. Commonwealth*, 262 Va. 105, 115 (2001)). In the instant case, the circuit court enjoyed such a "superior position" when evaluating C.E. Juror impartiality is a question of fact, *see Wainwright v. Witt*, 469 U.S. 412, 428 (1985), and a circuit court's decision to seat a juror is entitled to great deference on appeal, *see McGill v. Commonwealth*, 10 Va. App. 237, 241 (1990). Accordingly, the decision to retain or exclude a prospective juror "will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion." *Barrett*, 262 Va. at 826.[5] In determining whether the circuit court should have excluded prospective juror C.E., this Court must consider the "entire voir dire, not just isolated portions." *Juniper v. Commonwealth*, 271 Va. 362, 401 (2006).

---

[5] A circuit court's failure to not strike an impartial juror for cause is not made harmless by the juror's ultimate removal from a peremptory strike. *See, e.g.*, *Taylor v. Commonwealth*, 67 Va. App. 448, 454 (2017) (detailing how a defendant's use of peremptory strike does not make the error of failing to strike for cause harmless); *DeHart v. Commonwealth*, 20 Va. App. 213, 215 (1995) (finding that the error of failing to strike a juror for cause is not harmless even if the Commonwealth ultimately struck her); *David v. Commonwealth*, 26 Va. App. 77, 80-81 (1997) (finding that the use of a peremptory strike did not make the error harmless but also finding that, if the juror would have been rehabilitated from the declared bias, then the circuit court would not have committed a reversable error in refusing to strike her for cause).

- 6 -

In Virginia, a litigant must object to the seating of a juror "[p]rior to the jury being sworn." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (alteration in original) (quoting Code § 8.01-352(A)). Additionally, Rule 5A:18 requires that an "objection [be] stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." It is "[o]ne of the tenets of Virginia's jurisprudence . . . that trial counsel must timely object with sufficient specificity to an alleged error at trial to preserve that error for appellate review." *Perry v. Commonwealth*, 58 Va. App. 655, 666 (2011) (citing to Rule 5A:18; *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997); *Brown v. Commonwealth*, 8 Va. App. 126, 131 (1989)).

Montalvo Sanchez contends that the circuit court erred by denying his motion to strike C.E. for cause. However, he acknowledges that he failed to renew his motion to strike upon the completion of voir dire. In *Breard v. Commonwealth*, 248 Va. 68, *cert. denied*, 513 U.S. 971 (1994), the Supreme Court of Virginia held that a circuit court did not err when a venireman was not struck for cause after the defendant had failed to lodge a proper objection to the venireman. In *Breard*, "[d]uring voir dire, [the defendant] moved to strike [a venireman] for cause, claiming that she stated she was unsure whether she could follow the court's instructions and be objective. The [circuit court] denied the motion 'for the moment,' but stated that [it] would rehear it upon completion of voir dire." *Id.* at 80. However, once voir dire was completed, Breard did not renew the motion. *Id.* The venireman was ultimately struck by the Commonwealth from the jury panel. *Id.* On appeal, the defendant argued that the circuit court erred in failing to remove the venireman, but the Supreme Court of Virginia rejected his argument and noted that, due to his failure to renew the motion to strike for cause, "[t]he trial judge, therefore, reasonably could have assumed that [he] had acquiesced in seating [the venireman] as a juror." *Id.* As in the case

of *Breard*, Montalvo Sanchez did not renew his objection upon the completion of voir dire. As such, we find that Montalvo Sanchez did not lodge a proper objection to the seating of C.E.

Montalvo Sanchez attempts to invoke the ends of justice exception to Rule 5A:18. "'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman*, 25 Va. App. at 220). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)).[6] "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt*, 66 Va. App. at 210 (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Id.* (alteration in original) (quoting *Redman*, 25 Va. App. at 221).

The record before this Court does not warrant application of the ends of justice exception. The circuit court withheld ruling on Montalvo Sanchez's objection to seating Juror C.E. and did not prevent him from being able to renew his objection after conducting voir dire. Montalvo Sanchez questioned the potential juror but did not renew his objection. Thus, as in *Breard*, the circuit court judge reasonably could have assumed that Montalvo Sanchez had acquiesced in seating the venireman as a juror. *See Breard*, 248 Va. at 80 (finding it reasonable to assume

---

[6] "In order to show that a miscarriage of justice has occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Holt*, 66 Va. App. at 210 (quoting *Redman*, 25 Va. App. at 221-22).

Breard acquiesced to the seating of the venireman as a juror). Furthermore, the record does not establish that C.E. held firm opinions of such "fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *Justus*, 220 Va. at 976. Considering the entire voir dire, C.E. indicated that she could be fair and impartial despite her experience with law enforcement and child victims of sexual crimes and that she would not find Montalvo Sanchez guilty if the evidence does not rise to the level of proof beyond a reasonable doubt. Montalvo Sanchez also does not demonstrate that he was convicted for conduct "that was not a criminal offense" nor that the record did not "affirmatively prove that an element of the offense did not occur." *Holt*, 66 Va. App. at 210 (quoting *Redman*, 25 Va. App. at 222). Thus, Montalvo Sanchez has failed to demonstrate that there is any error or that the failure to apply the ends of justice provision would result in a grave injustice. Accordingly, this Court declines to consider Montalvo Sanchez's argument under the ends of justice exception to Rule 5A:18 and finds that his argument on appeal that C.E. should have been struck for cause is procedurally barred.

## II. Admission of Photograph

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). Likewise, a circuit court has discretion in weighing the probative value of evidence versus its prejudicial effect. *See Kenner v. Commonwealth*, 299 Va. 414, 424 (2021). "In evaluating whether a trial court abused its discretion, . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (alteration in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

"It is a fundamental principle of jurisprudence that evidence which is not relevant is not admissible." *Warren v. Commonwealth*, 76 Va. App. 788, 802 (2023) (quoting *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013)), *aff'd*, 303 Va. 60 (2024). "'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "For evidence to be admissible it must relate and be confined to the matters in issue and tend to prove an offense or be pertinent thereto." *Warren*, 76 Va. App. at 802 (quoting *McMillan v. Commonwealth*, 277 Va. 11, 22 (2009)). "The proponent of the evidence bears the burden of establishing[,] by a preponderance of the evidence, the facts necessary to support its admissibility." *Perry*, 61 Va. App. at 509 (alteration in original) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). However, "[a]n accused cannot, without stipulation of guilt, require the Commonwealth to pick and choose among its proofs, [and] to elect which to present and which to forego." *Lambert v. Commonwealth*, 70 Va. App. 740, 751 (2019) (second alteration in original) (quoting *Essex v. Commonwealth*, 18 Va. App. 168, 172 (1994)). A defendant "has no right to have the evidence 'sanitized.'" *Pryor v. Commonwealth*, 50 Va. App. 42, 53 (2007) (quoting *Gregory v. Commonwealth*, 46 Va. App. 683, 696 (2005)).

However, under Virginia Rule of Evidence 2:403(a)(i), evidence that can be shown as relevant may be excluded if "the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice." "All evidence tending to prove guilt is prejudicial to an accused, but the mere fact that such evidence is powerful because it accurately depicts the gravity and atrociousness of the crime or the callous nature of the defendant does not thereby render it inadmissible." *Powell v. Commonwealth*, 267 Va. 107, 141 (2004). A circuit court must determine whether "the probative value of the evidence is substantially outweighed by its *unfair* or *unduly* prejudicial effects." *Lee v. Spoden*, 290 Va. 235, 252 (2015). To be considered

"unfairly prejudicial," evidence must "inflame the passions of the trier of fact, or . . . invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Id.* at 251.

In the case at hand, contrary to Montalvo Sanchez's assertion that the contested photograph just showed "some young seven-year-old girl," the photograph depicted the victim at the age she was when Montalvo Sanchez decided to start sexually abusing her, and as age of the victim is an element of the crimes he was charged with committing, it was relevant in demonstrating an element of the offense being tried. *See* Code § 18.2-67.3. In addition to tending to prove that B.G. was under the age of 13 at the time of the abuse, the photograph enhanced the testimony of B.G. and her mother. As the record fairly supports the circuit court's actions, it did not abuse its discretion in admitting the photograph.

CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*